# SUPREME COURT OF ARKANSAS,

AT THE

## JUNE AND DECEMBER TERMS,

### 1862 AND 1863.

| 24 | 1 |
| 78 | 448 |

## DANLEY AND JOHNSON, EX PARTE.

Upon the adoption and ratification of a constitution by the people of a territory, or of a new constitution by the people of a state, as the fundamental law, no person can exercise any official function in the executive, legislative or judicial departments, otherwise than is provided for by such constitution: and if no provision is made therein for the continuance of existing officers, they cease to be such.

It is not a question for judicial determination, or for that peculiarly, to hold that a proposed constitution has been ratified or adopted as the fundamental law—that being the exercise of a political power, which the judicial department alone is not competent to declare other than as a matter of political history or cognizance: but as a matter of political cognizance this court knows that it exists by virtue of the constitution adopted by the convention of the people of this state,. on the 1st June, 1861, and must take notice that all the departments of the government are acting solely under the authority of this constitution.

The constitution adopted on the 1st June, 1861, being, then, the constitution of this state, and the governor, at that time, being continued as governor, by force of the constitution, only until the next general election, to be held on the first Monday of October next, it is the duty of the sheriff to advertise an election for governor according to law; and the mandamus should have been granted.

2

*Petition for Mandamus to Hon. J. J. Clendenin.*

GARLAND & RANDOLPH, for petitioners.

Mr. Justice FAIRCHILD delivered the opinion of the court.

At the general election of 1860, a governor of this state was elected, whose term of office, under the constitution then in force, would have continued till 1864.   But Christopher C. Danley and Richard H. Johnson, residents and voters of Pulaski county, supposing that the constitution adopted by the state convention on the 1st of June, 1861, required the election of a governor on the first Monday of October, 1862, and ascertaining from Thomas Fletcher, sheriff of the county, that he would not advertise such an election unless compelled thereto by legal authority, applied to the judge of the circuit court of Pulaski county for a mandamus against the sheriff, commanding him to make such advertisement. Upon the avowal of the sheriff not to give public notice, by proclamation, throughout the county, that a governor of the state was to be elected, the petition should have been sustained if the new constitution so abridged the term of office of the governor that was elected in 1860, as to require a governor to be elected at the general election of 1862.   The circuit judge did not, however, think it clear that this was the effect of the constitution of 1st June, 1861, and refused to grant the prayer of the petitioners, whence the subject has been properly referred to this court: and it is here to be ascertained and declared whether the governor that was elected in 1860, and to continue such till 1864, is, before the expiration of his original term of office, liable to be succeeded by a governor that may be elected on the first Monday of October, 1862.

The question pending is to be decided solely upon view of the terms and meaning of the new constitution, for beyond that, and unsupported by it, no person can be governor, or exercise any official function in the executive, legislative or judicial departments of state authority, if that constitution be the fundamental

law of the state. And that this constitution is the foundation and cause of the exercise of all authority, cannot be denied by a court that is created by the constitution, and is continued by its permission. We may decide upon the legality of acts, and pronounce upon the validity of laws, the test being whether the act or the enactment is conformable to the constitution: we may declare what is the meaning of the constitution, according to the fair and legal rules of construction, where the meaning is not so obvious as to preclude an attempt at construction; but a constitution is not to be declared by a court to be valid or invalid for the reason that it is the beginning of authority, and is itself the standard by which offices, privileges and rights are to be exercised and determined. This may be plainer by supposing the new constitution to be the origin of our existence as a state. In that case it would be evident that no one could fill the office of governor without being made so under and in accordance with the provisions of the constitution, for without the constitution there could be no governor. So, when the former constitution was displaced by the existing one, the latter became the source and measure of all offices, and of their extent and continuance, as if there had been no state government prior to the constitution of 1861. For this reason it was provided in the old constitution that " all officers, civil and military, now holding commissions under authority of the United States, or of the territory of Arkansas, shall continue to hold and exercise their respective offices until they shall be superseded under the authority of the state." So, the new constitution provides that " all officers, civil and military, now holding commissions under the authority of this state, shall continue to hold and exercise their respective offices until they shall be superseded under the authority of this state, in pursuance of the provisions of this constitution, or the ordinances passed by this convention." Without the first provision the United States and territorial officers could not have held and exercised their offices after the adoption of the constitution of 1836: nor could the officers of the state, at the date of the

adoption, by the state, of the constitution of 1861, have been held to be officers under the constitution without the provision above quoted, that continued their offices and authority. When the constitution of 1861 became the constitution of the state, the governor elected under the constitution of 1836, ceased to be such by virtue of his election in 1860, but must have since remained governor by virtue of some clause in the constitution that continued his office and authority till they should be suspended under the authority of the state, in pursuance of the provisions of the constitution, or of the ordinances of the convention. The governor will, then, continue to be governor so long as the constitution of 1861 authorizes him to hold and exercise his office, and no longer, if that constitution be the constitution of the state. This latter condition, and the duration of the authority of the governor under the constitution of 1861, remain to be considered.

It is not a question for judicial determination, or for that peculiarly, to hold a proposed constitution to be a ratified, an adopted constitution, the existing fundamental law. If this court were sitting under the constitution of 1836, and the question was whether the constitution of 1861, proposed by the convention, had been ratified by the state and adopted as its constitution, and the decision should affirm the validity of the new constitution, the decision would be made by a tribunal not authorized to exercise judicial authority : for, upon the principle of the decision, no pretended court would be a court unless constituted by, and acting under, the new constitution. So, if this court be a court provided by the constitution of 1861, it cannot entertain the question, as one of judicial enquiry, whether that constitution be the constitution in force, for, unless it be so, this court is not a judicial tribunal, and cannot decide any question of constitutional, statutory, or common law. It must follow that the recognition of the fundamental law of a state is an exercise of political power which the judicial department alone is not competent to create nor to declare, other than as a matter of political history or

cognizance. But as a matter of political cognizance we know that this court is acting as a tribunal created by the constitution of 1861, that its members have sworn to support it as the constitution of the state: and as a matter of political information we must take notice that all the departments of the state government have been and are acting solely under the authority of this constitution: and no question can be made but that it is the ratified constitution of the state, and adopted as such, by its sovereign power.

The constitution proposed by the convention, from its adoption by that body on the 1st of June, 1861, being then the constitution of this state, and the governor, at that time, being continued as governor only by force of the constitution, and as long as it provides, we have only to ascertain, from the constitution, the term of continuance. No provision is made in the new constitution for the continuance in office of the governor for the term for which he was elected. In this particular the constitution deals differently with him than with some other officers of the state. For by the 7th section of article VI. of the constitution, it is provided that the first appointment of judges of the supreme court, shall be made at the session of the general assembly next before the expiration of the terms of the judges then in office. The 9th section of the same article directs that the first election of clerks of the circuit court shall be held at the general election next before the expiration of the commissions of the present incumbents. The same provision is made concerning presiding judges of the county court by the 12th section of the same article. Respecting justices of the peace, the 16th section of the same article holds this unmistakable language: "The first election for justices of the peace under this constitution shall take place at the next general election, and those in office at this time shall continue in office until their successors are elected and qualified." So, by the two following sections it is declared that: "The constables now in office shall continue until their terms expire, and the first election under this constitution shall be held at the

next general election," and "the qualified voters of each county shall elect one sheriff, one coroner, one treasurer, and one county surveyor, for the term of two years, at the election next before the terms of those now in office expire."

Why special recognition was thus made of these existing terms of office, and provision made for their continuance to specific times, while the office of governor, the offices of secretary of state, of auditor and treasurer, and perhaps of other offices, should be passed by without mention, must remain a matter of speculation. Though private interest and feeling might excite curiosity, an enquiry would not likely be of public interest, and is not a subject for judicial investigation. But it is evident that the convention realized the distinction, for the 5th section of the schedule is: "The next general election for officers of this state, under this constitution, not otherwise herein provided for, shall be held on the first Monday of October, A. D. 1862, in the manner now prescribed by law."

The governor is an officer of the state under the constitution of 1861, whose election was not otherwise provided for than that it should be had on the 1st Monday of October, 1862, and it is the duty of the sheriffs of the several counties to advertise such election according to law. Sufficient ground was shown in the petition to the judge of the circuit court of Pulaski county to require him to compel the sheriff of that county to make the advertisement, and a mandamus will be issued by this court to the circuit judge, commanding him to grant the prayer of the petitioners.